Filed 8/10/23  Thomas v. Vasquez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MELISSA THOMAS, | B322870 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. |
| v. | 22STRO04529) |
| LEANDRO VINICIO VASQUEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Janice Munoz, Temporary Judge.  Affirmed.

Leandro Vinicio Vasquez, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# INTRODUCTION

Leandro Vinicio Vasquez appeals from a five-year restraining order issued under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) (DVPA).[1]  Because substantial evidence supported the family court's factual findings and the court did not abuse its discretion in issuing the restraining order, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Vasquez's Ex-girlfriend Obtains Restraining Orders Against Vasquez in March 2018 and August 2019*

Vasquez and Melissa Thomas began dating in 2014 and eventually lived together.  They jointly purchased property in Crestline, California in 2015.[2]  Their relationship ended in 2016.  After they broke up, Vasquez had several arguments with Thomas, repeatedly appeared uninvited at her residence, and once set up a tent across the street from her home.  Thomas obtained a two-year domestic violence restraining order against Vasquez in March 2018.  The restraining order required Vasquez to stay at least 100 yards from Thomas, her home, her workplace, and her vehicle and gave Vasquez until June 30, 2018 to retrieve his personal property from Thomas's home.  The order also

---

[1]    Statutory references are to the Family Code.

[2]    Vasquez did not dispute that Thomas's name was on the deed or that she paid the closing costs associated with the purchase of the property, but he claimed that she did not contribute to the payments on the loan on the property.

allowed Vasquez to communicate with Thomas by mail about the sale of the Crestline property.

Vasquez repeatedly violated the 2018 restraining order by contacting Thomas in writing, by phone, and by text message about matters unrelated to the sale of the Crestline property. Thomas reported these incidents to the police. Eventually, in August 2019, after an incident of domestic violence, Thomas obtained a three-year criminal protective order against Vasquez.

> B. *Thomas Files a Request for a New Domestic Violence Restraining Order Against Vasquez in July 2022*

Vasquez did not comply with the August 2019 criminal protective order. He drove by Thomas's residence and continued to contact her by mail, text message, and phone. In July 2020 counsel for Thomas sent Vasquez a cease-and-desist letter demanding Vasquez stop violating the restraining orders. Vasquez did not respond.

Because the criminal protective order was due to expire in August 2022 and Thomas feared further harassment and abuse, she filed an application for a new domestic violence restraining order, along with a request for a temporary restraining order, on July 21, 2022. On July 22, 2022 the family court issued a temporary restraining order prohibiting Vasquez from contacting Thomas "directly or indirectly, by any means, including by telephone, mail, email, or other electronic means," and set a hearing on August 15, 2022 on Thomas's request for a permanent domestic violence restraining order.

C. *The Family Court Issues a Five-year Domestic Violence Restraining Order Against Vasquez*

At the August 15, 2022 hearing Thomas testified Vasquez constantly harassed her. She also submitted a declaration describing specific instances of unwanted contact. Thomas stated that, in the six months before the hearing, and despite the criminal protective order, Vasquez had contacted her at least 10 times, most recently on July 28, 2022, when Vasquez called her twice and sent her four text messages. In one of the text messages Vasquez wrote, "I miss talking to you" and "I hope you're well." Thomas also said that Vasquez had driven by her house at least six times and that one time he yelled at her through the car window, "Hello, cutie-pie." Thomas testified that on one occasion Vasquez parked his car across the street and played loud music and that on another occasion he drove into Thomas's driveway and tried to speak with her. Thomas also submitted evidence Vasquez personally delivered a package containing masks and gloves to her house, sent her a greeting card on June 14, 2022, and called her twice on February 27, 2022.

Vasquez called as a witness Colleen Butler, his girlfriend at the time of the hearing, to testify about, among other things, communications she and Vasquez had with Thomas. When the family court asked Butler whether she had ever overheard any conversations between Vasquez and Thomas, Butler said she had, but then could not confirm who was speaking in those conversations. Concluding Butler could not verify the voice she heard was actually Thomas's voice, the court excluded Butler's testimony on this point as speculative. Following up on this testimony, the family court asked Thomas whether she had ever contacted Vasquez after the criminal court issued the protective

4

order in August 2019, and Thomas stated the last conversation she had with Vasquez was in June 2019 to discuss the sale of the Crestline property.

The family court ruled Thomas had proven that she and Vasquez had been in a dating relationship and had lived together and that Vasquez had engaged in acts of abuse, within the meaning of the DVPA.  Citing *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, the court also ruled that "violating a temporary domestic violence restraining order is in itself an act of abuse, but [acts of abuse] also can include disturbing the peace."

Referring to the August 2019 criminal protective order, the court stated that, "when we look at a prior domestic violence case when considering a current restraining order, we're going to look at Family Code [section] 6306," which requires the court to consider, among other things, whether the subject of the proposed restraining order had a prior conviction for domestic violence or was currently on parole or probation.  The court stated this factor was "problematic" because, while section 6306 required the court to consider criminal convictions, the statute also stated that "actions not involving a conviction shall not be considered."  The court ultimately concluded that Vasquez's "domestic violence probation was violated" and that it was "likely" appropriate for the court to consider Vasquez's violation of the 2019 criminal

protective order.[3]   The family court issued a five-year domestic restraining order, and Vasquez timely appealed.[4]

## DISCUSSION

A.   *Applicable Law and Standard of Review*

The DVPA authorizes the family court to issue a restraining order "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220; see *J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 640-641.) "Under the DVPA, a court may issue a protective order "'to

---

[3]   Vasquez does not argue the family court erred in considering whether he violated the terms of his probation in the criminal case or whether he violated the July 22, 2022 temporary restraining order.

[4]   Although Vasquez checked the wrong box on his notice of appeal (he checked the box next to "default judgment"), we liberally construe his appeal to be from the restraining order. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 [""'notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced"'"]; *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 251 [checking the wrong box on a notice of appeal "is not fatal to the appeal"].)

6

restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved," upon "reasonable proof of a past act or acts of abuse.""" (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115; see *J.H.*, at p. 641 [under § 6300, subd. (a), "[c]ourts may issue a restraining order to achieve [the DVPA's] purpose upon 'reasonable proof of a past act or acts of abuse'"].)

Section 6211 defines "domestic violence" as "abuse perpetrated against," among others, a former cohabitant or a person with whom the respondent had a dating relationship. (§ 6211, subds. (b), (c); see § 6209 [defining "cohabitant"].) "Abuse" within the meaning of the DVPA includes "behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(4).) Section 6320, subdivision (a), in turn, authorizes the court to enjoin "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." Abuse under the DVPA includes not only physical abuse or injury, but also "'[a]nnoying and harassing'" conduct. (*In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 536; see *K.L. v. R.H.* (2021) 70 Cal.App.5th 965, 981 [abuse includes conduct that ""destroys the mental or emotional calm of the other party"""]; *N.T. v. H.T.*, *supra*, 34 Cal.App.5th at p. 602 [abuse includes conduct that "disturb[s] the peace of the protected party"].)

We review a restraining order under the DVPA for abuse of discretion. (*In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 933; *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.) "'To the extent that we are called upon

7

to review the trial court's factual findings, we apply a substantial evidence standard of review.'" (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) "The inquiry is whether substantial evidence supports the court's finding, not whether a contrary finding might have been made. [Citation.] We accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment." (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1144.)

B.     *The Family Court Did Not Abuse Its Discretion in Issuing the Restraining Order*

Vasquez argues the family court abused its discretion in issuing the domestic violence restraining order because substantial evidence did not support the court's findings. Substantial evidence, however, supported the family court's finding that Vasquez committed abuse within the meaning of section 6320, subdivision (a). Thomas testified that Vasquez repeatedly contacted her by mail, phone, and text message and that he came well within 100 yards of her when he drove to her house and spoke to her—all in violation of prior court orders. Vasquez also delivered a package to Thomas's house, mailed her a greeting card, and repeatedly called her, as reflected in a phone log Thomas maintained. Such behavior constituted abuse under the DVPA. (See § 6320, subd. (a); *N.T. v. H.T.*, *supra*, 34 Cal.App.5th at p. 603 [writing letters and driving to the wife's apartment were acts of abuse under the DVPA].) The family court reasonably concluded these actions constituted a pattern of harassment and abuse. (See *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 381 [trial court did not abuse its discretion in granting an application for a

8

domestic violence restraining order based on evidence of "stalking and unwanted contact"]; *Sabato v. Brooks* (2015) 242 Cal.App.4th 715, 721, 725 [evidence the defendant sent the plaintiff "a handwritten letter and unwanted gifts," frequently contacted her "by mail, e-mail, text message, telephone," and had "unilateral, unwanted and harassing contacts" with the plaintiff supported a domestic violence restraining order, even if the defendant "characterized his messages as 'non-threatening'"]; see also *In re Marriage of F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 116 [court may issue a domestic violence restraining order under section 6300 "'to restrain any person . . . if an affidavit or testimony and any additional information provided to the court . . . shows, to the satisfaction of the court, *reasonable proof of a past act or acts of abuse*'"].)

In addition, court orders had no effect on Vasquez. He violated both the August 2019 criminal protective order and (by texting Thomas on July 28, 2022) the July 22, 2022 temporary restraining order. Vasquez also ignored counsel for Thomas's cease-and-desist letter. Vasquez's conduct, in the face of existing restraining orders, further supported issuing the new domestic violence restraining order. (See *In re Marriage of F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 117 ["Evidence of recent abuse or violation of a [temporary restraining order] is plainly relevant to whether a petitioner should be granted a protective order."]; *N.T. v. H.T.*, *supra*, 34 Cal.App.5th at pp. 602-603 [violating a temporary restraining order is an act of abuse].)

Vasquez argues that the 2018 restraining order allowed him to communicate with Thomas about the sale of the Crestline property and that Thomas "entrapped" him and tricked him into violating that order by initiating communications about the

9

property.  While Vasquez is correct the 2018 restraining order allowed him to communicate with Thomas about selling their property, Thomas testified that the last conversation she had with Vasquez about the sale of the property was in June 2019.  Vasquez did not challenge Thomas's testimony on this point or present any evidence to the contrary, and we may not revisit the family court's decision to credit Thomas's testimony.  (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1426; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786; *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.)  Thus, Vasquez's communication with Thomas after June 2019 violated the 2018 restraining order, the 2019 criminal protective order, or both, because the communication was unrelated to the sale of the property.  And, as discussed, even if Vasquez had not violated one or both of the prior restraining orders, he engaged in conduct that independently constituted abuse under section 6230.[5]

Citing section 6345, subdivision (a), Vasquez states the family court "abused its discretion in renewing the order without making a finding, and where the evidence failed to show, it was more probable than not there is a reasonable risk [Thomas] would be subjected to future abuse" by Vasquez or that Thomas's fear of him "was genuine and reasonable."  To issue a domestic violence restraining order, however, the family court need only find the party to be enjoined engaged in past acts of abuse.  (*In re Marriage of F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 115.)  The requirement of having a reasonable apprehension of future abuse

---

[5]     Vasquez also argues the court should not have allowed counsel for Thomas to testify at the hearing.  Counsel for Thomas, however, did not testify at the hearing.

10

applies to a request to renew an existing restraining order, not to a request for a new restraining order.[6] (See *Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 179 ["The legal standard for renewal of a DVRO is whether the protected party entertains a reasonable apprehension of future abuse."]; *Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 823 ["[n]o showing of the probability of future abuse is required to issue a DVPA restraining order"]; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 783 ["the trial court was not required to find a probability that [the defendant] would commit future abuse before issuing a [domestic violence] restraining order"].)

## DISPOSITION

The domestic violence restraining order against Vasquez is affirmed. Vasquez is to bear his costs on appeal.


SEGAL, Acting P. J.


We concur:



FEUER, J.          MARTINEZ, J.

---

[6] Thomas's prior domestic violence restraining order expired in March 2020.

11